White, O. J.
The two main questions in this case are : 1. Whether an agreement has been made between the beneficiaries under the will, settling the principle upon which the estate is to be divided among them. 2. If there has been no agreement, in what way does the will require the estate to be distributed;
In answering the first question, we deem it unnecessary to enter into an examination of the evidence submitted to establish such agreement. On this branch of the case, we deem it sufficient-to say that, after careful consideration of the evidence, we have felt no difficulty in arriving at the unanimous conclusion that the agreement relied on is not established.
Whether the conduct of Henry, in regard to the division of the estate that has already been made, and his acquiescence therein, have been such as to preclude him from setting it aside and requiring his brothers to refund any excess they may have received, it is not necessary now to determine.
It appears that a large portion of the estate yet remains in the hands of the trustees for distribution ; and for aught that now appears in the case, there may be more than sufficient to make up, in the distribution yet to be made, any' deficiency that may be coming to Henry.
But, however this may be with regard to Henry or any of his brothers, we are satisfied there is nothing in the conduct or acquiescence of Mrs. Hosmer, the plaintiff, that ought to estop her from insisting upon receiving the full share of the estate to which sh.e is entitled under the will. Although she was not married at the time the division was made, yet considering her age and inexperience in bus-iness, she had the right to rely on her brothers, and especially on the trustees of whom her brother Dimon was one, that her father’s will would be carried out, and that *673 she would not be required to take less than the will gave her.
Whether, if it shall become necessary to disturb the division heretofore made, in order to secure to Mrs. Hosmer her full share of the estate, Henry or any of her other Mothers, will have the right to have the division opened up and readjusted in accordance with the will, we need not now consider.
In the solution of the second question, namely, in what way does the will require the estate to be distributed, we> have found much difficulty.
The case has been very ably and elaborately argued, both orally and in printed arguments ; and we have given to- it much consideration.
At the time of the making of the will, three of the sons of the testator were over age, Dimon, the oldest, being then twenty-five years of age. Henry and Amanda' were then minors, the latter being of the age of ten years..
The first three paragraphs of the will relate to the disposition of silverware, wearing apparel, etc., and have no bearing upon the matters in controversy.
By the fourth paragraph of the will the testator devises a small lot of thirty feet front, in Mansfield, to each of his four sons, beginning with Dimon, the oldest, and naming them respectively in the order of their ages. These lots adjoin each other and are a sub-division of two town lots; the depth of the lots being equal to the width of the original lots. After making the will, the testator-sold to Dimon twenty-five feet of the thirty devised to Mm, and took his note for the purchase-money. He alse> sold: to Stephen the five feet of the lot devised to Dimon, which had not been sold to Dimon, with twenty feet of the- lot devised to Stephen. The remaining ten feet of- the- 1'ot devised to Stephen and the two lots devised to Edward and Henry were left as they were at the making of the will..
One of the questions for determinations is,, whether the lots thus taken by the sons, partly by purchase- and,' partly *674 by devise, are to be accounted for by them respectively, on final distribution, as so much received on their respective shares.
By the will, the testator gave all the remainder of his estate, both real and personal, to his executors in trust with authority to convert the-same into money and to invest the proceeds in such manner as they might judge most expedient.
Provision was made that his two youngest children should be supported and educated from the general income of his estate until they were twenty-one years of age. He also authorized his trustees to “ pay or loan ” to either of his three oldest sons such part of the income or principal of his estate as they might think proper, not exceeding at any time the one-fifth part of his personal estate to either one. of them; and after his two youngest children became twenty-one years of age, he authorized the trustees to “ pay or loan to them in like manner;” and if the trustees thought it expedient, he authorized them to make “ such payment or loan ” to his daughter at any time after she attained the age of eighteen years. The will then provided as follows-: “And whenever said trustees may deem it prudent and advisable to do so (after my youngest child living' shall have become twenty-one years of age), I hereby authorize them to make a fair and equitable division of all my real estate and personal property, state and bank stock, bonds and other evidences of debt, between my said five children or the survivors of them or their heirs, it being my desire that each of my children shall have the benefit of as near the same amount of my property as convenient when twenty one years of age ”...
The main controversy arises on this clause, taken in connection with the provisions found in the same paragraph of the will in regard to the support and education of the minor children and the making of payments or loans by the trustees. The construction which the trustees have given it, and upon which they have heretofore-acted in distributing the estate, is to ascertain the shares of the-devisees *675 on the basis of allowing to them equal amounts 'as' they respectively became of the age of twenty-one; and of adding-interest on the amount at the rate of six per cent: per an- ■ num from that time up to the first of January, 1863, the-time of the first distribution.
Under this method of distribution Dimon has received' $89,731.86, while Amanda has received only $50,771.52.
On the other hand, it is claimed on behalf of the plaintiff, that interest is to be charged to the devisees for all pay-' ments or loans made to them under the will by the trustees and that such payments or loans are not to be regarded as in the nature of advancements.
We can not regard either of these claims as warranted' upon a proper construction of the will. -
We do not propose, however, to enter into an examination of the various grounds upon which the respective claims of the parties are sought to be supported; but to' state as briefly as we can the conclusions at which a' majority of the court have arrived as.to the true construction-of the will, in respect to the matter in controversy. ■ , ' >
Our conclusions are as follows:
• 1. That the payments or'loans which the trustees were authorized to make to the older children, and to the younger as they became of age, were not intended to bear interest; nor to be refunded, unless it should become necessary in order to equalize the shares of the several childrexi on final distribution. Such' payments or loans were intended in the nature of advancements, made in anticipation of the final division of the estate. . ■!
2. The “desire” expressed by the .testator, that each of his children should have the benefit of as near the-same amount of his property as convenient when t.wenty-ohe years of age, has reference to the authority previously conferred on the trustees of making advancements to-the children, and of making the filial division of the estate among them; and is intended as a guide to the trustees in the execution of such authority. ' ’ " ' 'M.
3. The will contemplates the making of the final divis *676 ion of the property belonging to the estate among the ■children in specie; and in making such final division, each child is not only to be allowed the benefit of the payments or loans made by the trustees under the will, but, also, the benefit of'similar payments or loans intended as advancements made by the testator in his lifetime. The “ benefit,r which it was intendéd each of his children should have is such as would result from the receipt of his or her share of the property, by way of advancement, or on the final division. But the trustees are not authorized to make allowances to the older children by way of interest or otherwise for their not receiving their shares when they became of age, nor for their not having received more on their respective shares than was advanced to them, either by the testator in his lifetime or by the trustees after his death.
The will is not to be construed differently from what it would have been had the testator died shortly after the will was made. The will was made in 1850, and the scheme of disposition which it embodies seems to have remained unchanged in the mind of the testator. The authority given to the trustees to make payments or loans, in the nature of advancements, was prospective, and was intended only to operate after his death. It is to be presumed, that to the extent the testator intended his children to be advanced in like manner in his lifetime, he made such advancements himself.
4. The real estate described in the will as devised to the sons, is to be accounted for in the final division of the estate. The portions sold subsequently to the making of the will, are to be charged to the sons purchasing the same according to the terms of sale; the portions not sold are to be charged to the devisees respectively, according to the value-of-'the pai’t received by each, at the time the devise took effect.
A decree will'be entered in accordance with this opinion.
McIlvaine, J., dissented.